288 N.J. Super. 258 (1996)
672 A.2d 230
ANNA M. JONES, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CLAYTON C. JONES, DECEASED, PLAINTIFF-APPELLANT,
v.
OWENS-CORNING FIBERGLAS CORPORATION, DEFENDANT-RESPONDENT, AND E.I. DUPONT DE NEMOURS AND COMPANY, INC.; OWENS-ILLINOIS, INC.; GAF CORPORATION, IN ITSELF AND AS SUCCESSOR TO RUBBEROID CORP.; KEENE CORPORATION, IN ITSELF AND AS SUCCESSOR TO BALDWIN-EHRET HILL, INC.; CELOTEX CORPORATION, IN ITSELF AND AS SUCCESSOR TO PHILIP CAREY MFG. CO.; AC AND S INC.; EAGLE-PICHER INDUSTRIES, INC.; FIBREBOARD CORPORATION; PITTSBURGH CORNING CORPORATION, IN ITSELF AND AS SUCCESSOR TO UNARCO; H.K. PORTER COMPANY; ROCK WOOL MANUFACTURING COMPANY; SOUTHERN TEXTILE CO., FORMERLY SOUTHERN ASBESTOS CO., A DIVISION OF THE H.K. PORTER COMPANY; DELAWARE INSULATION COMPANY; ARMSTRONG WORLD INDUSTRIES, INC.; GARLOCK INC.; FLEXITALLIC GASKET CO.; ATLAS ASBESTOS CO.; J.W. ROBERTS, LTD., A DIVISION OF TURNER & NEWALL, LTD.; JOHN DOE CORPORATIONS (1-50); WILLIAM E. NEELD, JR., M.D.; G.F. REICHWEIN, M.D.; JOHN DOE, M.D.; AND RICHARD ROE, M.D., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1996.
Decided March 8, 1996.
*260 Before Judges KING, KLEINER and HUMPHREYS.
Joshua M. Spielberg argued the cause for appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys; Joseph J. Lisa, III, on the brief).
Frederick E. Blakelock argued the cause for respondent Owens-Corning Fiberglas Corporation (Tucker, Biegel and Goldstein, attorneys; Mr. Blakelock, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Anna M. Jones, Individually and as Administratrix Ad Prosequendum of the Estate of Clayton C. Jones, appeals the dismissal of her complaint seeking damages attributable to the death of her husband as a result of colon cancer allegedly caused by exposure to asbestos. As of the date of trial, plaintiff's claims against all other named defendants had been dismissed voluntarily or as a result of orders granting summary judgment, or had been settled. The only defendant remaining in the case was defendant Owens-Corning Fiberglas Corporation (Owens or defendant), a manufacturer of asbestos products.
*261 After the jury was selected, but prior to opening statements, defendant requested a hearing pursuant to N.J.R.E. 104 to determine the admissibility and adequacy of plaintiff's expert testimony, which plaintiff planned to introduce at trial through a de bene esse deposition taken six days prior to trial. Defendant also moved for summary judgment contending that plaintiff's medical proof of the cause of decedent's colon cancer was inadequate and that without medical evidence of causation, defendant was entitled to a dismissal of plaintiff's complaint. The trial judge reviewed the expert's report, the transcript of the expert's deposition testimony, and medical journals submitted in support of the medical opinion of plaintiff's expert. The judge allowed oral argument but concluded that an N.J.R.E. 104 hearing would be unnecessary. The judge found that the proposed expert evidence was insufficient to support plaintiff's claim and granted summary judgment to defendant.
We have considered the same information utilized by the trial judge and have compared that material to the standards enunciated in Landrigan v. Celotex Corp., 127 N.J. 404, 605 A.2d 1079 (1992), and Grassis v. Johns-Manville Corp., 248 N.J. Super. 446, 591 A.2d 671 (1991). We conclude that plaintiff's proposed medical evidence was sufficient to withstand a motion for summary judgment. We reverse and remand this matter for trial.

I
Decedent died on November 22, 1987, at the age of seventy, as a result of colon cancer that had spread to his lungs. He had been employed by E.I. DuPont de Nemours & Company, Inc., for over thirty years as a laborer and truck driver. As one of his job functions, decedent had been required to "load asbestos debris and also to bury asbestos waste," as a result of which he was "exposed to asbestos dust pollution." During argument at the motion hearing on November 29, 1994, plaintiff's attorney asserted that he was prepared to submit evidence that Jones' "exposure to *262 asbestos was extremely heavy for approximately thirty plus years of occupational employment."
In 1969 or 1971, Jones underwent a partial gastrectomy and gastrojejunostomy to correct medical problems related to "peptic ulcer disease."
In 1974, at the age of fifty-seven, Jones was diagnosed as having pulmonary asbestosis. At that time, he discontinued his years-long habit of smoking three to four cigarettes per day. He did not consume alcoholic beverages. His family medical history indicated that his mother and father had died of "natural causes."
In May 1985, Jones was diagnosed with "carcinoma of the cecum" or cancer of the colon. By August 1987, the cancer had spread to his lungs and brain, and he died a few months later.

II
Plaintiff's only expert witness was Dr. Howard Frumkin, a licensed physician specializing in occupational medicine, who has also received a doctoral degree in epidemiology. In 1988, Frumkin collaborated with Dr. Jesse Berlin and published an article entitled "Asbestos Exposure and Gastrointestinal Malignancy Review and Meta-Analysis" in the American Journal of Industrial Medicine.
The article reflected Frumkin's research into, inter alia, colon cancer causation by way of a "meta-analysis," that is, by way of "a study that analyzes the results of other studies in a systematic manner." As a result of his research and meta-analysis, Frumkin concluded that:
when all of the studies were combined systematically and when attention was confined to the studies with substantial asbestos exposure and to the studies that took account of latency, there was an increase in the rate of colorectal cancer related to asbestos exposure, compared to what was expected in the general population.
At his de bene esse deposition, Frumkin testified that he had reviewed Jones' medical records dating from 1985 forward, many of which were hospital records. Frumkin had also reviewed *263 Jones' medical records from a Dr. Charles A. Egoville, dating from 1982, as well as "radiology reports from over the years."
Based on his review of those records, Frumkin opined on direct examination that, "[a]ssuming that Mr. Jones was heavily exposed to asbestos, as described in your previous question, I believe that his asbestos exposure was a substantial contributing factor in the development of his colon cancer." Frumkin also testified that based on his meta-analysis, the "SMR, the Standardized Mortality Ratio, was 1.61, representing a 61 percent increase in the risk of colorectal cancer mortality  61 percent increase[d] chance of dying from cancer of the colon or rectum following substantial asbestos exposure."
When asked about other risk factors that increased a person's chances of developing colon cancer, Frumkin testified that "[d]ietary factors," such as a "high fat diet, a diet high in red meat, a diet low in fiber, these are risk factors for colon cancer also." Frumkin also identified "genetic factors," "rare diseases," and a "sedentary lifestyle without much exercise" as additional "risk factors for colon cancer." Moreover, Frumkin testified that, "[i]f somebody has more than one risk factor, then the risk [of developing colon cancer] would be even greater than if a person had only one risk factor."
When Frumkin was asked whether he would change his opinion that asbestos exposure was a substantial contributing factor to the development of Jones' colon cancer if he learned that there were other risk factors present, Frumkin replied that he would not. Frumkin explained that, "[i]f Mr. Jones had other risk factors for colon cancer  and he very likely did, being an American and eating the same kind of diet that we all do  that wouldn't change the fact that his asbestos exposure posed a risk."
On cross-examination, Frumkin testified that he had not diagnosed Jones' cancer or provided any medical treatment to Jones. The focus thereafter turned to cancer causation, whereupon defendant's counsel inquired:

*264 [Owens]: Okay. And you stated on your direct examination that all exposures contribute to the cumulative risk of developing colon cancer from asbestos exposure. Did I paraphrase that fair, fairly enough?
[Frumkin]: Yes.
[Owens]: Okay. But what you didn't say, did you  I don't think I heard you say that all exposures somehow contribute to actually cause the colon cancer. Am I correct?
[Frumkin]: The best way to try to explain that thought is that what we know from the epidemiologic data is that a large cumulative exposure to asbestos increases a person's risk of getting colon cancer. It's impossible to say that this exposure or that exposure was worse. All of the exposures taken together, in the aggregate, are what put a person into a higher risk category.
[Owens]: I understand that your answer relates to risk, but my question has to do with cause. Not all of the asbestos that was breathed in by Mr. Jones combined to cause his colon cancer, correct?
[Frumkin]: Well, I haven't used the word "cause." The words that I've used have been to substantially contribute to the development of his cancer. I'm avoiding the word "cause" because many things together, diet, and other factors, combine to cause a case of cancer. Cause is a complicated word when you think about it. I do think that the sum total of all of the asbestos that he inhaled put him into a category where the asbestos contributed to the development of his cancer.
[Owens]: But you agree with me that not all exposures combined to cause him his colon cancer, correct?
[Frumkin]: No, I think the best way to state my thought is that all of the exposures taken together created his increased risk of colon cancer and contributed to the development of his colon cancer.
Subsequently, defendant's counsel asked Frumkin whether the primary risk factor for colon cancer was a person's diet. Frumkin testified that diet was the risk factor about which most was known and "seems to be the risk factor associated with the greatest variability in colon cancer." When then asked what information Frumkin had been provided about Jones' dietary habits, he replied that he had received "[n]one." Additionally, when asked whether Jones' elevated cholesterol level was consistent with a "high-fat diet," Frumkin replied that it was.
In deciding Owens' motion, the judge first determined that Frumkin had failed to consider other possible causes of Jones' cancer, such as family history, diet, alcohol consumption, and "prior bowel diseases." The judge then noted that Frumkin had not expressly stated that asbestos exposure had caused Jones' *265 cancer, but had only opined that Jones' asbestos exposure had substantially contributed to the development of his colon cancer. Finally, the judge determined that Frumkin had failed to "quantify" the substantial contribution that Jones' asbestos exposure or other possible causes had made to the development of Jones' colon cancer.
The trial judge concluded that Frumkin's expert opinion would be excluded. Defendant was therefore granted summary judgment. We conclude that the trial judge erred in reaching its three conclusions, and also in finding that Frumkin's testimony would not aid the jurors, but rather would confuse them.

III
N.J.R.E. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Frumkin's qualifications were not an issue.
The 1991 Supreme Court Committee Comment notes:
Rule 702 follows Fed.R.Evil. 702 verbatim....
This rule intends to incorporate New Jersey case law establishing the general criteria for admissibility of expert testimony articulated by State v. Kelly, 97 N.J. 178, 208 [478 A.2d 364] (1984). As restated by Landrigan v. The Celotex Corporation, 127 N.J. 404, 413 [605 A.2d 1079] (1992), these criteria include the requirements that "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."
[Biunno, Current N.J. Rules of Evidence, 1991 Supreme Court Comment Committee comment on N.J.R.E. 702 (1994).]
Epidemiologic studies, that is, "the studies of disease occurrence in human populations," have been found to be evidential and scientifically reliable in toxic tort litigation. Landrigan, supra, 127 N.J. at 415, 605 A.2d 1079. Frumkin is both a physician and an epidemiologist, as was the expert in Grassis. 248 N.J. Super. at 451, 591 A.2d 671. As in Grassis, Frumkin did *266 not examine plaintiff's decedent prior to his death, but was provided with decedent's medical records, which contained substantial information pertinent to decedent's lifestyle essential to epidemiological evaluation. As noted in Landrigan, "epidemiologists, like experts generally, must be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." 127 N.J. at 417, 605 A.2d 1079.
A review of decedent's medical records reveals the following facts: (1) Jones had undergone abdominal surgery in 1969 or 1971 to correct complications arising from a peptic ulcer; (2) Jones' parents had died as a result of "natural causes," their deaths thus not being explicitly attributed to colon cancer; (3) Jones did not consume alcoholic beverages; and (4) Jones' years-long habit of smoking three to four cigarettes per day ended in 1974. Although Frumkin admitted that he was not supplied any information concerning decedent's diet, he presumed that decedent's diet was a risk factor which he would be required to consider. He also admitted on cross-examination that decedent's elevated cholesterol level was consistent with a "high-fat diet." Frumkin clearly factored into his opinion deleterious aspects of decedent's diet, yet he was able to conclude that decedent's asbestos exposure was a substantial contributing factor to the development of colon cancer. Thus, the judge was incorrect when he determined that Frumkin failed to consider information about Jones' family and personal medical history and his level of alcohol consumption.
The trial judge predicated his decision, in part, on the fact that Frumkin had not expressly stated that asbestos exposure had caused decedent's colon cancer. However, an expert is not required to phrase his conclusion in such a simplistic fashion. In Grassis, we observed that the trial court's opinion appeared:
to be predicated upon a notion that there was but a single cause of the particular cancer condition. There is no requirement in the law that a single cause be found and proven. All that is required is that the plaintiff show that a defendant's conduct or defective product was a proximate cause of the condition, i.e., a substantial factor in bringing the condition about. ... Apparently, the "more *267 likely than not" or 51% standard has in this and its companion cases been thought of as applying to asbestos exposure as the single cause of the disease, rather than to the proof of a significant factor in bringing about the disease. We do not tell a jury that a significant factor must be one that is 5%, 15%, 30% or 40%; we merely tell a jury that it must be "significant."
[248 N.J. Super. at 457, 591 A.2d 671 (emphasis added) (citations and a footnote omitted).]
Furthermore, the trial judge here did not follow our admonition in Grassis rejecting a 2.0 relative-risk factor as a "threshold" to the admission of epidemiological evidence. Additionally, the judge did not heed to the Supreme Court's discussion of relative risk factors in Landrigan, in which Justice Pollock noted:
Counsel acknowledged that under certain circumstances a study with a relative risk of less than 2.0 could support a finding of specific causation. Those circumstances would include, for example, individual clinical data, such as asbestos in or near the tumor or a documented history of extensive asbestos exposure. So viewed, a relative risk of 2.0 is not so much a password to a finding of causation as one piece of evidence, among others, for the court to consider in determining whether the expert has employed a sound methodology in reaching his or her conclusion.
[127 N.J. at 419, 605 A.2d 1079.]
Frumkin's opinion clearly "quantified" the substantial contribution that decedent's exposure to asbestos made to the development of his colon cancer. Frumkin opined that his statistical meta-analysis revealed that persons subjected to substantial asbestos exposure fell under a Standardized Mortality Ratio of 1.61, "representing a 61 percent increase in the risk of colorectal cancer mortality  a 61 percent increase[d] chance of dying from cancer of the colon or rectum following substantial asbestos exposure." Frumkin testified that this increased risk was "statistically significant," and he stated that asbestos exposure remained a significant factor even when other risk factors, e.g., diet, genetic factors, rare diseases, and sedentary lifestyle, are taken into consideration. Frumkin then related Jones' asbestos exposure to other cancer-causation risk factors and testified that Jones' exposure "also posed a risk."
We also note that the trial judge did not conclude that Frumkin's opinion had been based on an unsound methodology or on a methodology that is unsupported by some consensus of experts in *268 the field. See Landrigan, supra, 127 N.J. at 420-21, 605 A.2d 1079; Rubanick v. Witco Chem, Corp., 125 N.J. 421, 449-50, 593 A.2d 733 (1991). On remand, before admitting Frumkin's testimony, the court may wish to revisit the question of appropriate methodology particularly in light of Frumkin's acknowledgment in his deposition that his meta-analysis conclusion is not "universally shared" in the medical community. Universal acceptance of a particular methodology is not required before scientific opinion is admitted, yet the opinion must have the support of a consensus of experts in the field. Rubanick, supra, 125 N.J. at 449-50, 593 A.2d 733.
In sum, the decision to grant summary judgment was premised on criteria that are not required and the judge failed to consider that plaintiff's expert was fully apprised of decedent's medical history and had factored into his conclusion a presumption of an adverse diet. Under the circumstances, it was error to grant summary judgment.
Reversed and remanded for further proceedings consistent with this opinion.